UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MARLON WISE,<br><br>    Plaintiff,<br><br>        v.<br><br>DAVID S. FERRIERO,<br>Archivist of the United States National<br>Archives and Records Administration,<br><br>    Defendant. | Civil Action No. 10-1899 (JEB) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Marlon Wise is a black employee of the U.S. National Archives and Records Administration. He contends in this lawsuit that NARA discriminated against him on the basis of race and retaliated against him for engaging in protected activity through a series of incidents that took place over the course of nearly five years. Defendant David Ferriero, the Archivist of NARA, has now filed a Motion to Dismiss or in the Alternative for Summary Judgment. Much of the Motion concerns discrete claims that the Court determines — and Wise concedes — were not raised in his Second Amended Complaint. The Court finds, however, that the two causes of action that Plaintiff has in fact brought in this case — a discrimination-based hostile-work-environment claim and a retaliation-based hostile-work-environment claim — do survive the present Motion.

**I.  Background**

According to Plaintiff's Second Amended Complaint, which the Court must credit at this stage, Wise has been employed by NARA since October 2001. Second Am. Compl., ¶ 4. The events at issue in this case began in 2006 when Carlton Barnes, a black supervisor who was not

1

then in Wise's chain of command, called him "a punk ass nigger" in the presence of Clarence Simmons, the white supervisor of both Wise and Barnes. See id., ¶ 6. Simmons did not address Barnes's use of the racial slur. See id., ¶ 8. Wise subsequently reported the incident to Simmons's supervisor, Doris Hamburg, and after Hamburg too failed to address the episode, he reported it to her supervisor, Michael Kurtz. See id. No one took action. See id.

After "Barnes learned that . . . Wise had reported the name calling incident to his supervisors," he twice sought to have Wise disciplined relating to "phony allegations of wrong-doing." Id., ¶ 9. The Human Resources department declined to discipline Wise, but did not admonish Barnes for having made allegedly false accusations. See id.

"The following year," Wise applied for promotions to two vacant positions in his work unit. See id., ¶ 10. After discovering that Wise was seeking these promotions, Barnes purportedly told Simmons that he "would rather resign his position with the federal government than to see [Wise] promoted." Id. Barnes was subsequently transferred to a new position and thereby became the selecting official for both of the vacancies Wise had applied to fill. See id., ¶ 11. Although he contends that he was "the most experienced applicant and the employee with the most . . . Outstanding evaluations," Wise was not selected for either position. See id.

By virtue of this transfer, Barnes also became Wise's direct supervisor. See id., ¶ 13. Upon learning that Barnes was to supervise him, Wise went to Kurtz seeking a transfer "on five or six occasions and also attended an outside mediation session to address his workplace concerns." Id. Kurtz, along with Hamburg, who was also present, refused to offer him a transfer. See id.

Once Barnes officially became Wise's supervisor, the situation did not improve. Barnes, Wise alleges, continued to harass him and was "repeatedly rude, impolite and otherwise hostile

toward Plaintiff." Id., ¶ 12. In October 2008, Barnes arranged for every full-time permanent employee in his office except for Wise to receive two full days of training. See id., ¶ 15. Wise also suggests that he was expected to meet higher standards of production than other employees, see id., ¶ 17, and alludes to "other incidents of denial of training, denial of access to computers which he had frequently used for work before he protested the name calling incident, and other denials of opportunities to advance his career." Id., ¶ 22.

Wise also sought help from numerous individuals. He wrote letters to Simmons, his Congresswoman, and his union complaining of the harassment he believed he was suffering at Barnes's hands. See id., ¶¶ 14, 17. He contacted and requested assistance from, among others, the current Archivist, two former Archivists, NARA's Chief of Staff, and the Director of NARA's EEO office. See id., ¶ 23. These officials, however, "either denied that Plaintiff had a valid EEO claim . . . and/or mislead [*sic*] Plaintiff as to the proper administrative process to file an EEO claim and/or ignored Plaintiff's requests to address his EEO claims." Id., ¶ 25. He ultimately received some relief from the HR department, which agreed to temporarily detail Wise away from Barnes's supervision. See id., ¶ 19. Wise, however, was informed that HR would not be addressing Barnes's use of the racial epithet, which it wrote off as a "cultural thing." Id., ¶ 18.

Though Wise is no longer working under Barnes, he remains Wise's supervisor of record because the detail is only temporary. See id., ¶ 19. The opportunities for educational and career growth he had in his permanent position, moreover, are not available to him in the detail. See id., ¶ 20. He also claims that even since being detailed he has not received performance ratings or monetary awards he deserves. See id., ¶ 21.

In September 2009, Plaintiff, continuing his efforts to obtain redress from supervisory officials, attempted to deliver a letter expressing his concerns to the office of the then-Acting Archivist, Adrianne Thomas.  See id., ¶ 33.  After being told that Thomas was unavailable, he returned to his office.  Id.  About an hour later he tried again with the same result.  See id.  He then received a call from Kevin McCoy, who stated that he "was not to try to see, meet or give Ms. Thomas any letters.  In fact, the staff in Ms. Thomas' area did not want [him] to come back to the fourth floor and if [he] did there would be actions taken against him."  Id., ¶ 34 (alterations in original).  He was later summoned to the Branch Chief's office and given formal notice that he would face disciplinary action if he were to approach Thomas's office again because "Thomas, who is white, and her staff . . . felt threatened by him."  Id., ¶ 35.

Most recently, Wise contends that in 2010 Barnes wrongly omitted him from a list of employees who were to receive cash awards for their work on a project.  See id., ¶ 37.  Wise did ultimately receive the cash award, but only after having brought the issue to the attention of the EEO Office.  See id., ¶ 37.  He maintains that he was nevertheless harmed by having "missed the award ceremony and the positive recognition from co-workers and managers such participation in the ceremony would have provided him."  Id.

Wise first contacted an EEO counselor on September 23, 2009, and he filed a formal complaint of discrimination on November 12, 2009.  See id., ¶ 41.  This complaint "assert[ed] discrimination on the basis of race and identifie[d] facts describing retaliation . . . and referencing the hostility he faces in the workplace."  Id.  NARA dismissed all claims brought therein, and Wise appealed the agency's decision to the EEOC.  See id.  The EEOC rendered its decision on August 5, 2010.  Id.  Wise filed a Complaint, which has since been twice amended, initiating the instant action on November 4, 2010.  On December 6, 2010, Wise again initiated

4

contact with NARA's EEO Office and subsequently filed a second formal complaint of discrimination.  See id., ¶ 42.  In this one, Wise "asserted both race and retaliation as bases for the unlawful treatment resulting in a hostile work environment."  Id. NARA's EEO Office again dismissed Wise's complaint.

Ferriero has now filed a Motion to Dismiss or in the Alternative for Summary Judgment. The request for summary judgment relates only to the failure to exhaust discrete claims and whether the denial of an award was an adverse employment action.  See Reply at 9.  As these issues are ultimately moot, see Section III, *infra*, the Court need focus only on the standard under Rule 12(b)(6).

## II.    Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of an action where a complaint fails to "state a claim upon which relief can be granted."  In evaluating Defendant's Motion to Dismiss, the Court must "treat the complaint's factual allegations as true . . . and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'"  Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000) (quoting Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979)) (internal citation omitted); see also Jerome Stevens Pharms., Inc. v. FDA, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

Although the notice pleading rules are "not meant to impose a great burden on a plaintiff," Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 347 (2005), and "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (internal quotation omitted).  Plaintiff must put forth "factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.  Though a plaintiff may survive a 12(b)(6) motion even if "recovery is very remote and unlikely," Twombly, 550 U.S. at 555 (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)), the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level."  Id. at 555.  The Court need not accept as true, moreover, "a legal conclusion couched as a factual allegation," nor an inference unsupported by the facts set forth in the Complaint. Trudeau v. Fed. Trade Comm'n, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986) (internal quotation marks omitted).

**III.    Analysis**

At first glance, this case appears to pose numerous questions relating to the exhaustion of administrative remedies and whether certain incidents qualify as actionable adverse employment actions.  See generally Mot. at 8-26.  Indeed, Ferriero's Motion devotes twenty-three of twenty-six pages to argument that is premised on his reading of Wise's Complaint as raising numerous discrete discrimination claims stemming from many of the incidents detailed therein.  This is not an unreasonable reading of Wise's admittedly ambiguous pleading.  The Second Amended Complaint contains two counts, titled "Adverse Employment Actions Taken Against Plaintiff on the Basis of Race" and "Adverse Employment Actions Taken Against Plaintiff on the Basis of Retaliation."  Second Am. Compl. at 11.  Both state that "[t]he unlawful actions taken against Plaintiff, resulting in the creation of a hostile work environment and interference with career opportunities which, if uncorrected, will continue causing harm, were committed," respectively, "because of Mr. Wise's race" and "because of Mr. Wise's participation in protected activities." Id.

Any uncertainty as to whether Wise intended with this language to bring both discrete discrimination and retaliation claims based on individual events and hostile-work-environment claims or just the latter is dispelled by his Opposition. Wise there abjures the various discrete claims Ferriero believed his Complaint had raised and argues solely in support of his hostile-work-environment theory. He explicitly characterizes his Complaint as raising "two claims of hostile work environment," Opp. at 25, one based on a discrimination theory and the other on a retaliation theory, and he sets out and applies the hostile-work-environment standard. See id. at 14-25. In addition, his exhaustion argument clearly concerns only the hostile-work-environment theory. See id. at 25-29. The Court therefore finds that only hostile-work-environment claims — one premised on discrimination, the other on retaliation — are presented in this case. To the extent Plaintiff might later attempt to resuscitate additional claims, however, the Court considers such arguments to be waived. See Iweala v. Operational Technologies Servs., Inc., 634 F. Supp. 2d 73, 80 (D.D.C. 2009) ("It is well understood in this Circuit that when a plaintiff files an opposition to a motion to dismiss addressing only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.").

This drastically simplifies matters. Ferriero concedes that Wise's hostile-work-environment claims were "timely and fully exhausted." Mot. at 21. He also clearly states that his alternative Motion for Summary Judgment does not concern the hostile-work-environment claims, and he thus moves only to dismiss them under Rule 12(b)(6). See id. at 7-9. All that remains for the Court to decide, then, is whether, as a matter of law, the allegations contained in the Second Amended Complaint suffice to sustain the two hostile-work-environment claims.

Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such

7

individual's race, color, religion, sex, or national origin," 42 U.S.C. § 2000e-2(a), or "because he has made a charge . . . or participated in any manner in an investigation" of employment discrimination. 42 U.S.C. § 2000e-3(a). The Supreme Court has held that these provisions make it unlawful for an employer to "requir[e] people to work in a discriminatorily hostile or abusive environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993). A hostile work environment can amount to either discrimination or retaliation under Title VII. See, e.g., Harris v. Wackenhut Servs., Inc., 419 Fed. Appx. 1, 1 (D.C. Cir. 2001) (discrimination); Singletary v. District of Columbia, 351 F.3d 519, 526 (D.C. Cir. 2003) (retaliation). Wise has made both claims, alleging that he was subjected to a hostile work environment both because of his race and because of his protected activity. See Second Am. Compl. at 11.

To prevail on a hostile-work-environment claim under either a discrimination or a retaliation theory, "a plaintiff must show that his employer subjected him to 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" Baloch v. Kempthorne, 550 F.3d 1191, 1201 (D.C. Cir. 2008) (quoting Harris, 510 U.S. at 12). "To determine whether a hostile work environment exists, the court looks to the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance." Id. at 1201 (citing Faragher v. City of Boca Raton, 524 U.S. 775, 787-88 (1998)). "The Supreme Court has made it clear that 'conduct must be extreme to amount to a change in the terms and conditions of employment.'" George v. Leavitt, 407 F.3d 405, 416 (D.C. Cir. 2005) (quoting Faragher, 524 U.S. at 788). By adhering to these standards, the Court thereby "ensure[s] that Title VII does not become a general civility

code" that involves courts in policing "the ordinary tribulations of the workplace." Faragher, 524 U.S. at 788 (citation and internal quotation marks omitted).

The incidents Wise claims created a hostile work environment are laid out in detail in Section I, *supra*. Ferriero contends that even accepting the veracity of Wise's allegations and construing the Second Amended Complaint in the light most favorable to him, he has not established that he was subjected to a hostile work environment. See Mot. at 21-23; Reply at 5-8. Wise, on the other hand, maintains that he has pled facts that satisfy the hostile-work-environment standard. Alternatively, Wise's attorney, Gary Brown, has submitted a Rule 56(f) Declaration in which he attests that he needs additional discovery in order to "establish facts which support Mr. Wise's claim of a hostile work environment." Mot. Attachment (Decl. of Attorney Gary T. Brown), ¶ 3.

While additional discovery certainly might assist Wise in establishing elements of his claim —for example, that the hostile work environment was in fact motivated by discrimination and/or retaliation — it would not help him to counter the challenge raised by Ferriero here. The Supreme Court has stated that "if the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no Title VII violation." Harris, 510 U.S. at 21-22. Conduct that Wise did not know about, therefore, cannot not be used to establish that he was subjected to a hostile work environment. See Hutchinson v. Holder, --- F. Supp. 2d ---, 2011 WL 4537878, at *15 (D.D.C. 2011); Weger v. City of Ladue, 500 F.3d 710, 736 (8th Cir. 2007); Burnett v. Tyco Corp.*,* 203 F.3d 980, 981 (6th Cir. 2000). Discovery, accordingly, could not help Wise to demonstrate its existence.

The Court finds, nevertheless, that the allegations contained in his Second Amended Complaint, considered, as they must be, in the light most favorable to Wise, could suffice to

establish that he was made to endure a hostile work environment. Although Ferriero is correct that a single "utterance of an epithet" does not constitute a hostile work environment, see Harris, 510 U.S. at 21-22; Hunter v. District of Columbia, 797 F. Supp. 2d 86, 94 (D.D.C. 2011); DeLoatch v. Harris Teeter, Inc., 797 F. Supp. 2d 48, 62 (D.D.C. 2011), the racial slur was the beginning, not the sum total, of the episodes Wise claims constituted a hostile work environment. In addition to vague allegations concerning continuous harassment, he has identified myriad incidents ranging from threats of discipline based on false accusations to being singled out and excluded from trainings and award ceremonies and denied promotions. Although they took place over the course of a few years, Wise could provide evidence supporting these allegations sufficient for a reasonable jury to find that the purported harassment was both severe and pervasive. Cf. Holmes-Martin v. Leavitt, 569 F. Supp. 2d 184, 193 (D.D.C. 2008) (denying motion to dismiss hostile-work-environment claim because plaintiff "alleged some conduct in support of her claim" and noting that plaintiff must plead facts that "support," not "establish," that claim).

Ferriero's contention that Wise is simply "attempt[ing] to use the hostile work environment theory to pursue discrimination and retaliation claims based upon discrete incidents," Reply at 8, moreover, relies on a theory expressly rejected by the D.C. Circuit's recent decision in Baird v. Gotbaum, 662 F.3d 1246 (D.C. Cir. 2011). See Mot. at 22 (citing Baird v. Snowbarger, 744 F. Supp. 2d 279 (D.D.C. 2010), the very decision Baird v. Gotbaum vacated in relevant part). In that case, the court clarified that episodes that may well give rise to individual Title VII claims can also combine to form a hostile-work-environment claim:

> [W]e find no authority for the idea that particular acts cannot as a
> matter of law simultaneously support different types of Title VII
> claims, and of course, plaintiffs are free to plead alternative
> theories of harm that might stem from the same allegedly harmful

>conduct. Thus, although a plaintiff may not combine discrete acts to form a hostile work environment claim without meeting the required hostile work environment standard, neither can a court dismiss a hostile work environment claim merely because it contains discrete acts that the plaintiff claims (correctly or incorrectly) are actionable on their own.

Id. at 1252. Incidents like the agency's failure to promote Wise, therefore, cannot be excluded from his hostile-work-environment claim simply because they may well have formed the basis of distinct Title VII claims.

At the end of the day, Wise's Second Amended Complaint clears the Motion-to-Dismiss hurdle, if not by much. His allegations must ultimately be supported by record evidence, and he will need to show that Barnes, who is also black, was actually motivated by Plaintiff's race or his protected activity in order to withstand future dispositive motions. The Court cannot conclude at this juncture, however, that his hostile-work-environment claims should be dismissed.

## IV. Conclusion

For the foregoing reasons, the Court ORDERS that:

1. Defendant's Motion to Dismiss or in the Alternative for Summary Judgment is DENIED; and

2. Defendant shall file an Answer on or before February 16, 2012.

**SO ORDERED.**

                                            /s/ James E. Boasberg
                                            JAMES E. BOASBERG
                                            United States District Judge

Date: February 3, 2012